FISK, PLAINTIFF IN ERROR, v. RESER, DEFENDANT IN ERROR.

1. DEMURRER TO SEPARATE DEFENSE.

In passing upon a demurrer to a separate defense purporting to be an answer to the whole complaint, such defense is to be considered as though it were the only answer in the case, and with this limitation the demurrer brings up for review the entire pleadings.

2. PAROL PROOF—PROMISSORY NOTE.

Parol proof is admissible to show the circumstances under which persons other than the payee, and apparently not otherwise connected with a promissory note, have indorsed the same.

3. STATUTE OF FRAUDS.

The promise of one person, though in form to answer for the debt of another, if founded upon a new and sufficient consideration, moving from the creditor and promisee to the promisor, and beneficial to the latter, is not within the statute of frauds, and need not be in writing.

4. DEBT, ASSIGNABLE.

Where, after the execution and delivery of a promissory note, a person other than the payee and not otherwise connected with the note, for

a new and sufficient consideration received by himself from the payee, promises to pay the note and thereupon indorses the same, he thereby makes the debt his own, and such debt is assignable so as to vest in the assignee a right of action in his own name.

*Error to the District Court of Arapahoe County.*

ACTION by the assignee of a promissory note against an indorser; other matters stated in the complaint are also relied on to sustain the action. The pleadings, so far as the same are necessary to an understanding of the opinion, are as follows:

COMPLAINT.

Plaintiff Fisk, for amended complaint, complains and alleges: "That on or about the 11th day of November, A. D. 1882, one Edgar D. Parker, for value received, made, executed and delivered to Elizabeth S. Iliff, as guardian for Edna Iliff, Louise Iliff and Willie I. Iliff, minor children of said Elizabeth S. Iliff, his certain promissory note for the payment of thirteen thousand dollars with interest thereon, at the rate of ten per cent per annum, payable quarterly, or to be counted as principal and bear like interest; said note to be payable on or before three years after date, which said note was and is in words and figures following, to wit:

"'DENVER, Colo., November 11, 1882.

"'On or before three years after date, I promise to pay to the order of Elizabeth S. Iliff, "guardian," thirteen thousand (13,000) dollars, for value received, negotiable and payable at * * * without defalcation or discount, and with interest from date at the rate of ten (10) per cent per annum; interest payable quarterly, or to be counted as principal and bear the like interest till paid.          EDGAR D. PARKER.'"

"That the interest on said note to the 20th day of November, A. D. 1884, has been paid and credited thereon.

"That said note was secured by a deed of trust upon certain real property situate in Arapahoe county, Colorado, then owned by said Edgar D. Parker, and described as follows: Block 29, in Witter's First Addition to the city of Denver—

except 100 feet on Willow lane by 120 feet on Deer street, being the southwest corner of said block.

" That on the 14th day of June, A. D. 1884, said Edward A. Reser became and was the owner of said real estate, subject to the payment of said note so secured by deed of trust upon said property.

" That while he was the owner of said property, and on, to wit, the 19th day of December, A. D. 1884, in consideration that said Elizabeth Iliff, the holder of said note, would not foreclose the said deed of trust on account of a default in the payment of the interest existing at that time, and in the further consideration of a credit of $2,000 on said note, said Edward A. Reser then and there guaranteed the payment of said note and agreed to pay the same, and then and there indorsed the same on the back thereof, in the words and figures following, to wit : ' E. A. Reser.'

" That afterwards, and on, to wit, the 31st day of December, A. D. 1885, there was credited on said note, by reason of the sale of said property under said deed of trust, the sum of seven thousand and nine hundred and sixty dollars.

" That no part of the balance of said note nor any payments except those stated have been paid on said note.

" That after the maturity of said note, and on, to wit, about the 1st day of May, A. D. 1887, the same was duly indorsed and delivered by said Elizabeth S. Iliff as said guardian to this plaintiff for a valuable consideration, which said last mentioned indorsement was on the back of said note immediately under the indorsement of defendant, and plaintiff is still the legal owner and holder thereof.

" That long before the maturity of said note said Edgar D. Parker departed from the state of Colorado and has ever since remained away from said state, and his whereabouts have been and are unknown to this plaintiff and said Elizabeth S. Iliff, though both plaintiff and said Elizabeth S. Iliff have made diligent search to ascertain his address and residence.

" That long before the maturity of said note said Edgar D. Parker became and ever since has remained totally insolvent,

so that it would have been entirely useless to have recovered judgment against him.

"That due notice was given to the defendant in this case of the failure of the maker of said note to pay the same.

"Wherefore plaintiff prays judgment."

### SECOND DEFENSE OF ANSWER.

Defendant Reser for a second and further defense, "alleges that no note or memorandum in writing expressing the consideration subscribed to or signed by the defendant in this case was ever made of any such contract as is alleged in said complaint, or of any contract by which the defendant agreed to pay the said note described in said complaint, or to guarantee the payment thereof, or to become surety for the payment thereof, or to become bound by the said note in any way or manner whatsoever.

"That the only writing in existence out of which any liability can arise to the defendant is the bare words ' E. A. Reser ' written on the back of the said note mentioned in said complaint."

### DEMURRER.

"That said pretended second defense does not state facts sufficient to constitute a defense to the plaintiff's complaint herein."

The demurrer was overruled. Plaintiff elected to abide by his demurrer; and thereupon final judgment was rendered against him. Plaintiff brings the cause to this court by writ of error.

Messrs. ROGERS, SHAFROTH & WHITFORD, for plaintiff in error.

Mr. JOHN P. BROCKWAY, for defendant in error.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The only matter assigned for error is the overruling of

plaintiff's demurrer to the second defense. In passing upon a demurrer to a separate defense purporting to be an answer to the whole complaint, such defense is to be considered as though it were the only answer in the case, and, with this limitation, the demurrer brings up for review the entire pleadings.

The demurrer was an admission of the truth of all the facts well pleaded in the second defense; in like manner, every material allegation of the complaint not controverted by the second defense, must, for the purposes of the determination of the demurrer, be taken as true. Code, § 71.

The material facts thus admitted and taken as true, are as follows:

In November, 1882, Parker executed the note in controversy for $13,000, payable three years after date with interest, said note being secured by a deed of trust upon certain real property.

In June, 1884, defendant Reser became the owner of said real property *subject to the payment of said note,* and while he was such owner, in consideration that the holder of the note would not foreclose the deed of trust on account of a default in the payment of the interest existing at that time, and in the further consideration of a credit of $2,000 on said note, Reser *guaranteed the note and agreed to pay the same, and then and there indorsed his name on the back of said note.*

In December, 1885, there was credited on said note by reason of the sale of said real property under the deed of trust the sum of $7,960. No part of the note except the payments above stated has been paid.

In May, 1887, the payee indorsed and delivered the note to plaintiff for a valuable consideration by writing her name immediately under defendant's indorsement; and plaintiff is still the legal owner of the note.

Before the maturity of the note Parker departed from the state of Colorado, has ever since remained away, and his whereabouts are unknown to plaintiff, though plaintiff and the payee have made diligent search to ascertain his address.

Long before the maturity of the note Parker became and ever since has remained totally insolvent.

Due notice was given defendant of the failure of Parker to pay the note.

There was no note or memorandum in writing expressing the consideration subscribed to or signed by defendant of any contract, agreement or guaranty to pay the note in any way or manner whatsoever, other than the note itself, upon the back of which defendant subscribed his name.

The statute of frauds and perjuries has long been a fruitful source of legal controversies and conflicting judicial decisions.  The particular provision of our own statute involved in the present action has not been exempt from such conflicts; it is to be found in section 12, chapter 41, General Statutes 1883, and is in effect as follows: *That every agreement or special promise to answer for the debt, default or miscarriage of another person, shall be void, unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party charged therewith.*   See Gen. Stats. § 1521 ; 1 Mills An. Stats. § 2025.

Was the agreement of defendant Reser, as shown by the pleadings, within the foregoing provision of the statute of frauds ?  That the debt which he agreed to pay was a part of the promissory note, and hence a part of the debt originally incurred by Parker, is not controverted.  But it is contended in behalf of plaintiff that defendant by his subsequent dealings and transactions made such debt his own, and that his agreement to pay the same is therefore not within the terms of the statute.

In behalf of defendant it is contended that the suit is brought upon the promissory note described in the complaint; that the note shows the debt sued for to be the debt of Parker and not the debt of defendant; that the bringing of the suit must, therefore, be held to be an attempt to charge defendant with the debt of another person ; and that even though defendant actually agreed for a valuable consideration to pay such debt, yet he is not bound by such agreement,

because he never subscribed any written note or memorandum of such agreement. In short, that the pleadings show that defendant's agreement was a mere oral agreement to pay the debt of another person, and is, therefore, void under the statute of frauds. It must be admitted that there is force and logic in this reasoning; but a long line of judicial decisions has sanctioned a more equitable construction of the statute when applied to facts and circumstances such as are disclosed in this action.

In *Good v. Martin*, 1 Colo. 168, Chief Justice Hallett, delivering the opinion of the court, said: " If one put his name upon the back of a note while it is in the hands of the maker, from this act alone it may be presumed that he did so with intent to serve the maker by becoming surety for him; but if he put his name upon the back of the same note after it has passed into the hands of the payee, we cannot determine from this act alone whether he intended to serve the maker or the payee."

The learned judge then proceeded to examine the evidence relating to the signing of the note by the party sought to be charged as maker. The evidence embraced the time, place and circumstances under which the note was executed, and the consideration for which it was given. The opinion concludes that a new trial should have been granted because of the insufficiency of the evidence to charge the appellant as maker of the note, and the judgment was reversed for that cause. This decision was reviewed and affirmed by the supreme court of the United States. Mr. Justice Clifford, delivering the opinion of the court, used the following language:

" Cases also arise where the signature of a third person is subsequent to the making and delivery of the note, and in that case the third person, as to the payee, is not a maker, but a guarantor, and his promise is void if without consideration; but the consideration may be the original consideration if the note was received at his request and upon his promise to guarantee the same, or if the note was made at his request and for his benefit. 1 Parsons, Contr. (6th ed.)

244. Judge Story says that the interpretation ought to be *just such as carries into effect the true intention of the parties, which may be made out by parol proof of the facts and circumstances which took place at the time of the transaction.*" See *Good v. Martin,* 95 U. S. 97.

Counsel in their briefs and arguments have not referred to any decision of this court except the case of *Good v. Martin.* They seem to have overlooked the case of *Thatcher v. Rockwell,* 4 Colo. 409, wherein Chief Justice Thatcher, delivering the opinion of this court, approved the rule that, " An agreement, if it be not collateral, but in the nature of an original agreement to pay the debt of another, founded on a sufficient consideration received by the promisor himself, is not within the provisions of the statute, and, therefore, need not be in writing ; but, if the agreement to answer for the debt of another be wholly collateral, it must be in writing."

The statute of frauds was pleaded in the *Thatcher-Rockwell* case the same as in this case ; the decision, therefore, would seem to be directly in point. Other Colorado decisions recognize the same rule, and none that we have been able to find indicate a contrary doctrine. *Mulvany v. Gross,* 1 Colo. App. 112; *Greene v. Latcham,* 2 Colo. App. 416; *Green v. Morrison,* 5 Colo. 20; *De Walt v. Hartzell,* 7 Colo. 601; *Maxwell v. Dell,* 11 Colo. 418.

In *Rey v. Simpson,* 22 Howard (U. S.) 341, it was held that parol proof was admissible to show the circumstances under which persons, other than the payee and apparently not otherwise connected with a promissory note, had indorsed the same.

In *Emerson v. Slater,* 22 Howard (U. S.), at page 43, it is said : " Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the

performance of it may incidentally have the effect of extinguishing that liability."

In *Dyer v. Gibson*, 16 Wis. 580, Chief Justice Dixon delivering the opinion of the court, it was held that: "The promise of one person, though in form to answer for the debt of another, if founded upon a new and sufficient consideration, moving from the creditor and promisee to the promisor, and beneficial to the latter, is not within the statute of frauds, and need not be in writing, subscribed by him, and expressing the consideration."

The following are some of the cases cited by counsel and examined in the preparation of this opinion. Their citation in this connection must not be understood to be an unqualified approval of the views therein expressed. The opinions above quoted from more nearly express our view of the law applicable to the present controversy. 1 Jones on Mortgages, § 750; Brandt on Suretyship, §§ 55, 56; *Mallory v. Gillett*, 21 N. Y. 412; *Brownell v. Harsh*, 29 Ohio St. 631; *Calkins v. Chandler*, 36 Mich. 320; *Van Doren v. Tjader*, 1 Nev. 380; *Clapp v. Webb*, 52 Wis. 638; *Lamb v. Tucker*, 42 Ia. 118; *Hawkes v. Phillips*, 7 Gray, 284; *Lincoln v. Hinzey*, 51 Ills. 435; *Hayden v. Weldon*, 43 N. J. L. 128; *Fitzgerald v. Morrissey*, 14 Neb. 198; *Perkins v. Catlin*, 11 Conn. 230, *Fuller v. Scott*, 8 Kan. 25; *Bateman v. Butler*, 124 Ind. 223; *Schafer v. Farmers & M. Bank*, 59 Pa. St. 148; *Nichols v. Allen*, 23 Minn. 542; *Schneider v. Schiffman*, 20 Mo. 571.

In the present case, more than eighteen months after the execution of the note in controversy, defendant Reser became the owner of the real estate by which said note was secured. His ownership of the property, however, was *subject to the payment of said note;* that is, defendant had become the owner of the land burdened with the incumbrance; and his ownership consisted simply of the equity of redemption. *Stephens v. Clay*, 17 Colo. 495. Though he may not at the time of purchasing have personally assumed to pay the incumbrance, nevertheless, he was bound to pay it, and the whole of it, or run the risk of losing the land by foreclosure

proceedings. 1 Jones on Mortgages, § 736. Six months after thus acquiring the land, and when there was a default for the nonpayment of accumulated interest upon the note for which the holder of the note might foreclose, a new contract was entered into between the holder of the note and defendant to the following effect: The holder of the note agreed not to foreclose the deed of trust on account of the interest then due, and also gave a credit of $2,000 upon said note; and, upon such consideration, defendant then and there *guaranteed the payment of said note, and agreed to pay the same, and then and there indorsed his name upon the back of said note.*

The value of the land subject to the trust deed does not appear; hence, we cannot know the value of defendant's equity of redemption. But it is clear that the promise to forbear foreclosing the trust deed, and the credit of $2,000 upon the note secured by such trust deed, were sufficient consideration for defendant's promise to pay the same. The credit of $2,000 was a substantial relief to him from the burden of the incumbrance. It is true, it is not alleged for what length of time the holder of the note promised to forbear foreclosing the trust deed; but the agreement was, *not to foreclose for the default in the payment of the interest then existing*, and no further default could, by the terms of the note, occur for nearly two months; so that a suspension of foreclosure proceedings for that period was secured by defendant's promise to pay the residue of the note.

It is scarcely necessary to further multiply words to demonstrate that *defendant's agreement to pay the note was, as between himself and payee, an original agreement based upon a new and sufficient consideration moving from the creditor and promisee to himself and for his benefit.* Though the agreement to pay the note was, in form, an agreement to answer for the debt of another, and did *incidentally* serve both the payee and the maker of the note, yet, it is manifest that the primary object of defendant was to serve himself, and that the controlling consideration with him was the protection of his own interests. By the agreement he secured two im-

portant benefits : *first*, a substantial reduction of the incumbrance upon his land; *second*, forbearance from foreclosure proceedings for a considerable period, during which defendant might provide for the rapidly accumulating interest upon such incumbrance. There was nothing whatever in the transaction between the payee and defendant to indicate that he had any object, purpose, desire or motive whatever to serve any other person than himself. As between defendant and the payee, the transaction was equivalent to a re-execution and re-delivery of the note for the reduced amount, that is, for the original amount of the note less the credit of $2,000. The obligation thus assumed by defendant to pay the note became and was thereafter his own debt, that is, a debt due to the payee from himself, and, as such, was unquestionably assignable by the payee so as to vest in her assignee a right of action thereon in his own name. · Code, §§ 3 and 4; See *Ross v. Kennison*, 38 Ia. 396 ; also, *Home Ins. Co. v. A. T. & S. F. R. R. Co.*, recently decided by this court, (*ante* p. 46) and authorities there cited.

Our conclusion is that the second defense is not sufficient in law to bar plaintiff's action. Defendant is, however, entitled to a trial upon the issues formed by the other defenses of his answer. The judgment of the district court is reversed and the cause remanded, with directions to sustain the demurrer to the second defense, and for further proceedings in accordance with this opinion.

*Reversed.*